**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **IBTIHAL MAJEED,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Case No.: 24-417 |
| | ) |
| | ) |
| **GROUND SERVICES** | ) |
| **INTERNATIONAL, INC.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| **SERVE:** | ) |
| | ) |
| **Registered Agent for Defendant** | ) |
| **Incorp Services, Inc.** | ) |
| **7288 Hanover Green Drive** | ) |
| **Mechanicsville, VA 23111** | ) |

**COMPLAINT**

COMES NOW the Plaintiff, Ibtihal Majeed, by counsel, and files this Complaint against the Defendant, Ground Services International, Inc. ("Defendant" or "Dnata"), and sets forth the following allegations:

**INTRODUCTION**

1. In this Complaint, the Plaintiff, Ibtihal Majeed ("Majeed") asserts claims of discrimination, failure to accommodate, and harassment in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), against her former employer, the Defendant, Ground Services International, Inc., doing business as Dnata (Loudoun Co) ("Dnata").

2. Majeed asserts a claim of retaliation in violation of the ADA.

3.   Majeed asserts a claim of discrimination and harassment in violation of the Virginia Human Rights Act, as amended by the Virginia Values Act, Va. Code Ann. § 2.2-3900 et seq. ("VHRA").

4.   Majeed asserts a claim of retaliation under the Virginia Whistleblower Law, Va. Code § 40.1-27.3.

5.   Majeed asserts a claim of failure to pay wages in violation of the Virginia Wage Payment Act, Va. Code§ 40.1-29 et seq. ("VWPA").

6.   Dnata wrongfully terminated Majeed's employment on August 3, 2022. Dnata's decision to terminate Majeed's employment was motivated by her disability, as demonstrated by direct statements of its employees, and by Majeed's repeated opposition to conduct that she reasonably believed to be disability discrimination and failure to pay wages, including her complaints to her immediate supervisor and other members of the Dnata management team throughout the summer of 2022.

**PARTIES**

7.   Majeed is a female Middle Eastern citizen of the United States who resides in Sterling, Virginia.

8.   Majeed is disabled: she had breast cancer and as part of the treatment for such, her certain lymph nodes were removed, which has caused her to have a weakened immunity system and weakened health and stamina which greatly impacts and substantially limits her body in various ways, including but not limited to her ability to work and her ability to stand and walk for an extended period of time.

9.   Ground Services International, Inc. is a global business which operates in some 84 countries.  Its U.S. headquarters is in Orlando, Florida with a facility located in Sterling, Virginia that employs over 15,000 employees.

10. On February 7, 2017, Ground Services International, Inc. received approval of its Certificate of Assumed or Fictitious Name to conduct business as Dnata (Loudoun Co).

11. Majeed was employed by Dnata from May 15, 2022 until August 3, 2022.

### JURISDICTION AND VENUE

12. This action seeks declaratory judgment, injunctive relief, back pay, front pay, compensatory damages, punitive damages, court costs, and attorneys' fees for the Defendant's violations of federal and state law.

13. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, based upon the Court's federal question jurisdiction in relation to Count VI (Plaintiff's claim against the Defendants under 18 U.S.C. § 1962).

14. This Court also has supplemental jurisdiction over the remaining Counts in the Complaint under 28 U.S.C. § 1367(a).

15. As alleged herein, Defendant carried out its wrongful acts at or near Dulles International Airport in Northern Virgina.  As such, venue properly lies with this Court under 28 U.S.C. § 1391(b)(2) – (3).

16.   Majeed has previously satisfied the procedural and administrative requirements of the ADA, and all conditions precedent to the filing of this suit have been performed or have occurred:

     a.   Majeed filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), styled Charge No. 570-2023-00560, on April 4, 2023. This Charge was timely filed, and it was dual filed with the

Virginia Office of Civil Rights – OCR No: 23-N0240.

b. The EEOC issued a Notice of Right to Sue Majeed on April 10, 2023, which she received the same day.

c. This Complaint has been filed within 90 days of Majeed's receipt of the Notice of Right to Sue.

d. On January 9, 2024, the Virginia Office of Civil Rights issued its Notice of Right to Sue Majeed.

16. – A: On June 30, 2023, Plaintiff filed an action against the Defendant in the Richmond Circuit Court (Virginia).  On March 5, 2024, the Richmond Circuit Court granted Plaintiff's Motion for Voluntary Nonsuit.  Plaintiff's re-filing of the Counts in this Complaint is timely under the provisions of Va. Code § 8.01-229, as they have been re-filed within six months of the date that the nonsuit Order was entered.

## FACTS

17. Majeed is a 55-year-old Middle Eastern female who is a citizen of the Unites States and the Commonwealth of Virginia.

18. On May 17, 2022, Majeed was hired by Dnata to work as a Passenger Service Agent at Dulles International Airport located in Sterling, Virginia.

19. Prior to her work at Dnata, Majeed was a teacher for eleven years, after which she was a vice principal for four years, and she also was the spouse of a high-ranking diplomat for more than six years in Washington, D.C..

20. Prior to working at Dnata, Majeed has never faced any disciplinary action while at a job, nor has she received negative feedback regarding her performance, her attitude, or her communication.

21. During her time at Dnata, Majeed was never late and never left without her supervisor's direction or permission.

22. Majeed had breast cancer and as part of the treatment for this, she has a weakened immunity system and weakened health and stamina which greatly impacts and substantially limits her body in various ways, including but not limited to her ability to work and her ability to stand and walk for an extended period of time.

23.    Standing for long periods of time without a break can exacerbate these symptoms and cause pain and inflammation.

24.    Dnata has a documented, bad history in how it treats employees.   By way of example, in December 2023, there was a strike by its employees in Geneva, Switzerland, to demand significant working conditions and working, living wages.  This type of treatment of Dnata's employees was reflected in how Majeed and other employees who worked for Dnata at Dulles  IAP were treated. Among other things, Dnata did not provide its employees, including Majeed, with health insurance.

25. On May 30, 2022, after she was hired at Dnata, Majeed was experiencing significant pain due to standing for the entirety of her shifts without breaks, because of her disability.

26. Majeed spoke to her supervisor, Yasmin Megahed ("Megahed"), to report her disability and ask for accommodation.

27. Majeed told Megahed that she could submit a doctor's note regarding her disability.

28. Megahed told Majeed that providing accommodations are against Dnata company policy and would not be granted. She further told Majeed that if Majeed reported her disability, she was likely to be fired.

29. Megahed told Majeed that another Dnata company policy required new hires to work

compulsory double shifts.

30. On June 7, 2022, Majeed submitted a medical report to Megahed and asked her to submit it to HR.

31. Megahed refused to do so though Majeed attempted to turn in the form three times.

32. Megahed repeated that Majeed would be fired if the company found out she is disabled.

33. [Reserved]

34. Majeed attempted to communicate with Jordan Vinety ("Vinety"), Passenger Service Manager, several times to report disability discrimination after her conversations with Megahed, but he did not answer her and sent her a message that he was too busy to talk. On June 7, 2022, while Vinety was at the work site, Majeed again tried to talk to Vinety about the discrimination that she was enduring. Vinety confirmed that Majeed would be required to work two shifts back-to-back with no break, and he also confirmed that providing accommodations went against Dnata's policy and would not be granted. Majeed was classified as a part-time employee, but still was required to work an 11-hour shift with no breaks.  She also was not provided with health insurance.

35. Majeed was the only Dnata employee who did not have a schedule.  Dnata also failed to train her, and she was not given access to their system which is used to check in passengers in further, apparent acts of retaliation against her.

36. Majeed had to contact Megahed multiple times requesting her schedule on multiple occasions. When she asked Megahed for her schedule, she was frequently assigned to a double shift afterward in an apparent act of retaliation.

37. Megahed failed to schedule Majeed for any hours during the second week of June

2022, so Majeed reported to work on June 13, 2022, to inquire about her schedule and to attempt to pick up a shift.

38. Dnata was seriously understaffed at the time, so there were always shifts to pick up; and an employee who simply reported to work was always able to receive an assignment regardless of whether they were scheduled to work that day.

39. Megahed provocatively and loudly, in front of the other staff, told Majeed to "go home" and "you are not in the schedule today."

40. Majeed told Megahed that she wanted her schedule and had not received it.

41. Majeed told Megahed she was discriminating because of Majeed's disability.

42. In further acts of harassment and retaliation, Megahed and a male employee then ejected Majeed from the premises. This occurred in the public area of the airport, in front of passengers.  They treated Majeed as if she was a thief and bullied her and humiliated her by engaging in this conduct.

43. A few minutes later on the same day, Vinety appeared at the work site.  Majeed again reported to him the discrimination, retaliation, and harassment by Megahed. She also said that what had just occurred would not have occurred if Vinety and the company had listened to her earlier complaints and taken action to address such.

44. Majeed asked Vinety for his work email address so that she could explain the factual events that had occurred, because HR had not permitted her to submit a written complaint. During this encounter, she experienced acute stress and her body was shaking and she felt shivers, apparently caused this stress.  Despite her request, Vinety did not allow Majeed to write a complaint.  He stated that Dnata's policy was for only HR to write out a complaint. Before permitting Majeed to leave, Vinety asked her to sign some documentation, including

a Post-Offer Health Questionnaire and an anti-discrimination policy, nearly a month after her initial hire and on the same day that she reported Megahed's discriminatory behavior. After this, Majeed sent Vinety several emails regarding the disability discrimination, harassment, and retaliation that she had endured and was continuing to endure.

45. Although she had received no discipline up to that time, and had done nothing wrong, Majeed was issued a "Final Warning" with a 10-day unpaid suspension.

46. The discipline against Majeed stated that she had a "disagreement" with Megahed, during which Majeed alleged that Megahed discriminated and retaliated against and harassed Majeed.  It also stated that Majeed had experienced "outbursts" directed at customers and was "not receptive to direction from her supervisor to obtain the appropriate training."

47. Majeed had previously communicated to Megahed that she had not received proper training and requested the same.

48. Majeed had been provided no training in response to her request.

49. Dnata did not provide any documentary evidence to substantiate its claim that Majeed had episodes of "outbursts" and the allegations against her in the disciplinary document were false.  This caused Majeed to suffer additional stress and trauma from what was occurring. Due to this, she had a car accident the same day in the parking lot at Dulles.  This also further caused Majeed's health to decline, as the increased stress that she had been enduring, and continued to endure at greater levels, caused her to suffer inflammation and damage to her mouth and lips.  Majeed texted picture of her mouth and lips to Vinety.

50. Majeed's statement from June 13, 2022 stated that ""Ibtihal claims she has not been trained and asked why she hasn't received training...Ibtihal asked what was the correct way, but did not get the guidance she needed."

51. Majeed also reported in her June 13, 2022 statement that Megahed harassed and treated Majeed differently than the other employees, belittling and making derogatory statements toward Majeed, questioning her intelligence, and requiring her to cover her hair while not asking the same of any other employee, even those with long hair.

52. Majeed's June 13, 2022 statement contains her report that Megahed told Majeed that she would be terminated if management found out she was disabled.

53. The statement notes, "lbtihal felt this was a threat and insisted that Megahed submit it to management and HR."

54. On June 16, 2022, Miriam Rivera, another Dnata employee, sent an email to several Dnata employees, including Vinety, Lamyae Bennani, and Shilpa Shikarpuri, containing discussion of Majeed and Megahed.

55. In the email, Rivera discusses Majeed's suspension, noting again that "she's had outbursts."  Rivera further stated that "(i]f ..  what has been stated by Megahed in her email is fact, I support termination."

56. However, in the very next section of her email, Rivera states that "Megahed is not the right person for the role she occupies. This is based on counseling/documentation that has been addressed with her regarding her performance and where employees have complained about feeling harassed, discriminated and bullied by her."

57. There had also been concerns about customers "not wanting her on their account due to performance, professionalism."

58. Despite this, Dnata did not consider that the discipline issued against Majeed was based upon the bad faith misrepresentations of Megahed. While Majeed was suspended (based upon false allegations of her alleged conduct), Megahed was permitted to resign on or

about June 22, 2022 and she did not receive discipline that was comparable to the discipline imposed upon Majeed.

59. Majeed sent an email to Vinety on June 22, 2022, requesting that he pull the security camera footage of the incident that resulted in the write-ups so that she could object to her discipline; but no footage was provided, and Majeed was given no opportunity to defend herself.

60. On June 22, 2022, Majeed renewed her reports of discrimination in an email to Vinety, repeating her request for his help in resolving her discrimination complaint.

61. Vinety responded to Majeed by telling her that Megahed had been let go and stated that "[t]his means that she no longer needs to be mentioned from you to Dnata."

62. He further told her that "anything involving Megahed and yourself has been resolved and we will not further investigate as a decision has been made."

63. Majeed responded that the toxic work environment was still affecting her life. She told Vinety that she needed "real help and fairness."

64. Majeed returned to work on June 28, 2022 following her suspension.

65. On June 26, 2022, Majeed had raised her allegations to Dnata's headquarters in Florida.  And on June 28th, she raised her allegations to Dnata's global headquarters in Emirates UAE, hoping that someone would step in and take action to correct the wrongful conduct she had endured. During her twelve-hour shift, she requested the opportunity to sit down, as her legs were bothering her.

66. Majeed was told no, that sitting during shifts was against policy, and that she could "sit down at home."

67. Majeed's new supervisor, Sara, began to call Majeed into work even on her scheduled

days off.

68.  Other employees frequently no-call, no-showed their shifts, but received no discipline or reprimand.

69.  Majeed's paychecks started coming late, requiring Majeed to request them multiple times.

70.  Majeed's pay was supposed to be deposited onto a wisely pay card.  It appears that Majeed was never paid for her work on June 28, 29, and 30, 2022 (approximately 31 hours of work). Another paycheck, for her work on June 12 – 13, 2022, was apparently cut on time, it appears that Vinety withheld it until August 8, 2022, even though he told Majeed that it had already been deposited onto her wisely pay card (which had not occurred).

71.  On or about July 19, 2022, Majeed reported her concerns regarding the pay issues to her supervisor, Sara, via text message.

72.  She shared the same concerns with her colleagues via a group chat on What's App on or about July 22, 2022. In response, Vinety (who was the administrator of the group chat) had Majeed removed from the chat with her fellow employees, so that she could no longer communicate in that manner with them about the pay issues that she was experiencing and her requests to Dnata that such be corrected.

73.  On August 3, 2022, Majeed reported to work as scheduled.

74.  Her supervisor, Sara, asked her to escort a group of arrivals to security.

75.  However, at the security desk, Majeed's credentials did not work.

76.  When she asked why, she was told by the helpdesk that her credentials had been suspended two days prior, with the reason given being "Termination."

77.  Majeed was shocked and immediately attempted to contact Lamia in HR to discuss the issue.

78. Majeed returned to the main office to try and get a copy of the apparent termination document to ask why Dnata had not let her know and put her in this very embarrassing situation. While there, she encountered Vinety.

79. Vinety attempted to reprimand her for escorting the arrivals to security, claiming she had done so of her own accord and against policy. This was very traumatizing to Majeed, as it continued the pattern of discrimination, harassment, and retaliation that she had been enduring.

80. Majeed's termination notice notes that she "walked out and did not allow management to explain what the issue was. She then began to ask for her termination letter."

81. The termination notice also states that on "8/1/22" the following "Infraction" occurred:

> "Ibtihal took a task upon herself to take member of crew to the gate when not directed. This task is typically done with a TK operations manager or a member of management who are required to conduct the security check prior to entrance of the jetway or aircraft. Airport authorities became involved due to the door being opened by Ibtihal and cross contimating (sic) [contaminating] the arrival and sterile area. As we were discussing this she walked out and did not allow management to explain what was the issue. She then began to ask her for her termination letter."

This statement against Majeed was false as Ibtihal did not take "a task upon herself to take" a crew member "to the gate when not directed." Rather, Majeed did this specifically because she was directed to do so by her supervisor. The statement also falsely asserts that Majeed wrongfully cross-contaminated a "sterile area" which implies that she did this intentionally, which is not true. In addition to being directed to take the crew member to the gate, no one told Majeed what she learned for the first time during this incident: that her badge had been suspended, apparently two days earlier. Moreover,

Security personnel told Majeed that they understood she had been terminated two days earlier, but no one had told Majeed of this.

82. These false statements were made with actual malice towards Majeed. Mr. Vinety knew that Majeed had been directed to take the crew member to the gate, and he still falsely asserted that she violated company policy by merely doing what she was told to do. Moreover, Mr. Vinety knew that the statement which asserts, either directly or by implication, that Majeed contaminated a sterile area intentionally or willfully and hence, in violation of company policy, was false at the time that he made it. He made these statements willfully, with a desire to cause harm to Majeed and in so doing, to get her fired. Vinety also knew that Dnata frequently required its employees to work at Dulles without having security badge. This had occurred earlier with Majeed, as she started working at Dulles for Dnata on May 17, 2022, but did not receive her security bade until June 7, 2022. This further demonstrates the falsity of these allegations against Majeed and Dnata's malice towards her.

83. Majeed refused to sign the termination notice. Vinety then called the police to escort Majeed out, and he alleged that she refused to leave the office. However, when the police arrived, they understood the situation and that they did not need to escort Majeed out or even be there.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

84. Majeed hereby incorporates each of the above paragraphs as though fully set forth herein.

85. At all times relevant to this Complaint, Majeed was an employee of Dnata.

86. Dnata is an employer that employs more than 500 employees.

87. Majeed belongs to a protected category under the ADA because she is disabled; because she has a record of a disability; and because she was regarded as having a disability by Megahed and other management officials with Dnata.

88. At all times relevant to this complaint, Majeed performed her job duties in accordance with Dnata's legitimate expectations.

89. When Majeed attempted to submit medical paperwork to substantiate her disability, Megahed told her that reporting a disability would result in Majeed's termination.

90. When Majeed asked to be allowed to take a break to sit as an accommodation, she was told to "sit down at home."

91. Beginning in June 2022, Majeed complained to Megahed, Vinety, and other Dnata management that Megahed and Dnata had discriminated against her based on her disability.

92. Majeed reported disability discrimination to Dnata management on June 13, 2022.

93. Majeed's disciplinary paperwork related to her June 2022 unpaid suspension directly references Majeed's report of discrimination.

94. Dnata failed to conduct an independent investigation into Majeed's allegations. Dnata failed to engage in the interactive process after Majeed raised the issue of her disability to management.

95. Dnata failed to engage in the interactive process even after disciplining her for reporting discrimination.

96. Dnata terminated Majeed on August 3, 2022 based on her protected status as a disabled individual. In doing so, it committed unlawful discrimination under the ADA.

97. Dnata's discriminatory actions toward Majeed were taken with actual malice.

98. Dnata's discriminatory actions toward Majeed have caused her to suffer financially, economically, socially, mentally, emotionally, and physically. This harm is ongoing.

<u>**COUNT II**</u>
<u>**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**</u>

99. Majeed hereby incorporates each of the allegations in Paragraphs 1 – 83 as though fully set forth herein.

100. At all times relevant to this Complaint, Majeed was an employee of Dnata.

101. Dnata is an employer that employs more than 500 employees.

102. Majeed belongs to a protected category under the ADA because she is disabled.

103. At all times relevant to this complaint, Majeed performed her job duties in accordance with Dnata's legitimate expectations.

104. When Majeed attempted to submit medical paperwork to substantiate her disability, Megahed told her that reporting a disability would result in Majeed's termination.

105. When Majeed asked to be allowed to take a break to sit as an accommodation, she was told to "sit down at home."

106. Beginning in June 2022, Majeed complained to Megahed, Vinety, and other Dnata management that Megahed and Dnata had discriminated against her based on her disability.

107. Majeed reported disability discrimination to Dnata management on June 13, 2022. Majeed's disciplinary paperwork related to her June 2022 unpaid suspension directly references Majeed's report of discrimination.

108.  Dnata failed to conduct an independent investigation into Majeed's allegations.

109.  Dnata failed to engage in the interactive process after Majeed raised the issue of her disability to management.

110.  Dnata failed to engage in the interactive process even after disciplining her for reporting discrimination.

111.  Dnata terminated Majeed on August 3, 2022 based on her need for an accommodation for her disability. In doing so, it committed unlawful failure to accommodate under the ADA.

112.  Dnata's discriminatory actions toward Majeed have caused her to suffer financially, economically, socially, mentally, emotionally, and physically. This harm is ongoing.

<u>**COUNT III**</u>
<u>**RETALIATION IN VIOLATION OF THE ADA**</u>

113. Majeed hereby incorporates each of the allegations in Paragraphs 1 – 83 as though fully set forth herein.

114.  At all times relevant to this Complaint, Majeed was an employee of Dnata.

115.  Dnata is an employer that employs more than 500 employees.

116.  At all times relevant to this complaint, Majeed performed her job duties in accordance with Dnata's legitimate expectations.

117.  When Majeed attempted to submit medical paperwork to substantiate her disability, Megahed told her that reporting a disability would result in Majeed's termination.

118.  Beginning in June 2022, Majeed complained to Megahed, Vinety, and other Dnata management that Megahed and Dnata had discriminated against her based on her disability.

119.  Majeed reported disability discrimination to Dnata management on June 13, 2022.

120.  Majeed was suspended without pay on June 21, 2022.   Majeed's disciplinary paperwork related to her June 2022 unpaid suspension directly references  Majeed's report of discrimination.

121.  Majeed was suspended for "inappropriate conduct," the basis of which was her report of discrimination.

122.  Dnata failed to conduct an independent investigation into Majeed's allegations of discrimination.

123.  By engaging in the communications described above, Majeed was complaining about suspected violations of her civil rights, staging informal protests, and voicing her opinions about discriminatory activities. She explicitly communicated her reasonable belief that Dnata was discriminating against her based on her disability. As such, the communications described above constitute protected activity under the ADA.

124.  Dnata terminated Majeed on August 3, 2022 based on the complaints described above. In doing so, it committed unlawful retaliation in violation of the ADA.

125.  Dnata's discriminatory actions toward Majeed were taken with actual malice.

126.  Dnata's retaliatory actions toward Majeed have caused her to suffer financially, economically, socially, mentally, emotionally, and physically. This harm is ongoing.

**COUNT IV**
**DISCRIMINATION IN VIOLATION OF THE**
**VIRGINIA HUMAN RIGHTS ACT**

127.  Majeed hereby incorporates each of the above paragraphs in Paragraphs 1 – 83 as though fully set forth herein.

128.  At all times relevant to this Complaint, Majeed was an employee of Dnata.

129.  Dnata is an employer that employs more than 15 employees.

130.  Majeed belongs to a protected category because she is disabled.

131.  When Majeed attempted to submit medical paperwork to substantiate her disability, Megahed told her that reporting a disability would result in Majeed's termination. When Majeed asked to be allowed to take a break to sit as an accommodation, she was told to "sit down at home."

132.  Beginning in June 2022, Majeed complained to Megahed, Vinety, and other Dnata management that Megahed and Dnata had discriminated against her based on her disability.

133.  Majeed reported disability discrimination to Dnata management on June 13, 2022.

134.  Majeed's disciplinary paperwork related to her June 2022 unpaid suspension directly references Majeed's report of discrimination.

135.  Dnata failed to conduct an independent investigation into Majeed's allegations.

136.  Dnata failed to engage in the interactive process after Majeed raised the issue of her disability to management.

137.  Dnata failed to engage in the interactive process even after disciplining her for reporting discrimination.

138.  Dnata terminated Majeed on August 3, 2022 based on the complaints described above. In doing so, it committed unlawful discrimination under the VHRA.

139.  Dnata's discriminatory actions toward Majeed were taken with actual malice.

140.  Dnata's discriminatory actions toward Majeed have caused her to suffer financially, economically, socially, mentally, emotionally, and physically. This harm is ongoing.

## COUNT V
## HARASSMENT IN VIOLATION OF THE
## VIRGINIA HUMAN RIGHTS ACT

141.  Majeed hereby incorporates each of the allegations in Paragraphs 1 – 83 as though fully set forth herein.

142.  At all times relevant to this Complaint, Majeed was an employee of Dnata.

143.  Dnata is an employer that employs more than 15 employees.

144.  Majeed belongs to a protected category because she is disabled.

145.  As alleged above, on and after May 30, 2022, Majeed was subjected to harassment based upon a hostile work environment based upon her disability. These acts included, but are not limited to, the hostile treatment that she received from her supervisor, Megahed, through belittling and derogatory comments made to Majeed and in certain instances, in front of other Dnata employees; questioning Majeed's intelligence; and requiring her to cover her hair while not asking the same of other employees, whose hair was longer.  These acts also included the refusal of Megahed to properly schedule Majeed to work; the refusal of Dnata to permit her to submit her request for reasonable accommodation and documentation to support such; its  refusal to properly investigate her complaint once submitted; and the unpaid suspension that she was issued in June 2022 and the false basis asserted for such.  This unlawful harassment continued thereafter, including but not limited to the failure by Dnata to timely and fully pay Majeed for all of the hours that she worked, and the false allegations that it made against her upon which they relied in terminating her employment.

146.  The aforementioned conduct by Dnata created a hostile work environment, which altered the terms and conditions of  Majeed's employment.  This violated the provisions of

the VHRA.

147.   Dnata's acts of harassment toward Majeed with actual malice.

148.   Dnata's harassment of Majeed has caused her to suffer financially, economically, socially, mentally, emotionally, and physically. This harm is ongoing.

**COUNT VI**
**RETALIATION IN VIOLATION OF THE**
**VIRGINIA HUMAN RIGHTS ACT**

149.   Majeed hereby incorporates each of the allegations in Paragraphs 1 – 83 as though fully set forth herein.

150.   At all times relevant to this Complaint, Majeed was an employee of Dnata.

151.   Dnata is an employer that employs more than 15 employees.

152.   As explained above, Majeed asserted her rights under the Virginia Human Rights Act in relation to her disability and requested a reasonable accommodation for such. She also complained that she was being discriminated against because of her disability.  Such conduct was protected activity under the statute.

153.   Dnata refused to provide Majeed with the requested accommodation, and also refused to engage in the interactive process.

154.   Dnata's managers also retaliated against Majeed because she engaged in this protected activity. As explained above, shortly after Majeed engaged in this protected activity, Dnata suspended her without pay.  The disciplinary documents reference the fact that Majeed had complained about disability discrimination.

155.   Dnata terminated Majeed on August 3, 2022 based on the complaints described above. In doing so, it unlawfully retaliated against her in violation of the VHRA.

156.   Dnata's retaliatory actions toward Majeed were taken with actual malice.

157.  Dnata's retaliatory actions toward Majeed have caused her to suffer financially, economically, socially, mentally, emotionally, and physically. This harm is ongoing.

## COUNT VII
## VIRGINIA  WHISTLEBLOWER  ACT  (Va. Code § 40.1-27.3)

158.  Majeed hereby incorporates each of the allegations in Paragraphs 1 – 83 as though fully set forth herein.

159.  At all times relevant to this Complaint, Majeed was an employee of Dnata.

160.  Beginning in June 2022, Majeed complained to her supervisor that Megahed had engaged in illegal discrimination against her and also, that she had not been paid certain wages that she was due for work that she had performed.

161.  After Dnata ignored Majeed's complaints except to discipline her, Majeed continued  to report these issues to management officials.  Dnata failed to conduct an independent investigation into Majeed's allegations.

162.  Dnata disciplined Majeed for raising her reports of ongoing, illegal conduct against her, on June 13, 2022.

163.  Dnata subsequently terminated Majeed's employment for her reports of discrimination on August 3, 2022.

164.   By engaging in the communications described above, Majeed was complaining about suspected violations of her civil rights, staging informal protests, and voicing her opinions about discriminatory activities. She explicitly communicated her reasonable belief that Dnata was discriminating against her based on her disability and further, that she had not been paid all of the wages that she was due for work that she had performed. As such, the communications described above constitute a good-faith report of a violation of law pursuant to Va. Code § 40.1-27.3.

165.  Dnata terminated Majeed on August 3, 2022 because of the complaints described above. In doing so, it committed unlawful retaliation in violation of§ 40.1-27.3.

166.  Dnata's retaliatory actions toward Majeed have caused her to suffer financially, economically, socially, mentally, emotionally, and physically, and she seeks an award of all damages and other forms of relief to which she is entitled, as well as her reasonable attorneys' fees and costs.

## COUNT VIII
## RETALIATION IN VIOLATION OF THE
## FAIR LABOR STANDARDS ACT

167.  Majeed hereby incorporates each of the allegations in Paragraphs 1 – 83 as though fully set forth herein.

168.  At all times relevant to this Complaint, Majeed was an employee of Dnata.

169.  During her employment with Dnata, Majeed was a non-exempt, part-time employee who was compensated at an hourly rate.

170.  Dnata frequently failed to timely pay Majeed her earned wages for her hours worked.

171.  When Dnata did pay Majeed, it often underpaid her.

172.  Majeed complained both directly to her superiors and to her colleagues regarding Dnata's failure to properly and timely pay her for her hours worked.

173.  Within one (1) month of Majeed's complaints, Dnata terminated her employment based on back-dated disciplinary action that is unsupported by any documentary evidence. In doing so, it committed unlawful retaliation in violation of the FLSA.

174.  Dnata's retaliatory actions toward Majeed were taken with actual malice.

175.  Dnata's retaliatory actions toward Majeed have caused her to suffer financially, economically, socially, mentally, emotionally, and physically. This harm is ongoing.

**COUNT IX**
**FAILURE TO PAY WAGES IN VIOLATION OF**
**THE VIRGINIA WAGE PAYMENT ACT**

176.  Majeed hereby incorporates each of the allegations in Paragraphs 1 – 83 as though fully set forth herein.

177.  At all times relevant to this Complaint, Majeed was an employee of Dnata.

178.  During her employment with Dnata, Majeed was a non-exempt, part-time employee who was compensated at an hourly rate.

179.  Dnata frequently failed to timely pay Majeed her earned wages for her hours worked.

180.  When Dnata did pay Majeed, it often underpaid her.

181.  Dnata's failure to fully and timely compensate Majeed for her hours work constitutes a violation of the VWPA (Va. Code § 40.1-29).  Majeed estimates that she was not paid for 31 hours that she worked.

182.  Majeed is entitled to recover the wages which were wrongfully withheld, including the amount that she has not been paid, plus an amount equal thereto as liquidated damages, as well as interest at the statutory rate from the date that the wages were due.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court enter judgment against the Defendant and in addition that this Court award the Plaintiff:

1. A declaratory finding that Defendant engaged in the illegal acts of discrimination, harassment, and retaliation, as outlined above in the applicable Counts of the Complaint;

2. An Order restraining future violations of the statutes referenced in each of the Counts in the Complaint;

3. Immediate reinstatement to the position of Passenger Service Agent with Dnata, with pay and benefits commensurate with the Plaintiff' skills and experience, or in the alternative, an appropriate award of front pay, for Counts I – VIII;

4. An award of backpay at the rate which Majeed would have earned had she continued to work for Dnata (which upon information and belief, is approximately $1,000 per week), from the date of Majeed's termination through the date of judgment, plus all additional earnings and benefits that the Plaintiff would have received but for the Defendant's unlawful discrimination and retaliation, plus interest at the judgment rate of 8% per annum, for Counts I – VIII;

5. Compensatory damages in the amount of $ 300,000 for past and future economic and non-economic losses, emotional distress, pain and suffering, humiliation, mental anguish, impairment of quality of life, and consequential losses, for Counts I, II, and III;

6. Punitive damages in the amount of $300,000, for Counts I, II, and III;

7. Compensatory damages in excess of $1,000,000, in an amount to be determined at trial which Plaintiff believes should amount to $3,200,000, for past and future economic and non-economic losses, emotional distress, pain and suffering, humiliation, mental anguish, impairment of quality of life, and consequential losses, for Counts IV, V, and VI;

8. Punitive damages in the amount of $350,000, for Counts IV, V, and VI;

9. An award of all wages that were due and payable to Plaintiff in an amount to be determined at trial, for Count IX, in addition to a liquidated amount of such wages as permitted by statute;

10. An award of Plaintiff's reasonable attorneys' fees and costs; and

11. An award of any other relief to which Plaintiff is entitled and which the Court deems

to be fair and just.

## JURY DEMAND

A trial by jury is demanded.

Respectfully Submitted,

/s/ *John B. Flood*

_____

John B. Flood, Of Counsel (VSB No. 79813)
BERLIKLAW, LLC
1818 Library Street, Suite 500
Reston, Virginia  20190
Tel: (703) 722-0588
JFlood@berliklaw.com
*Counsel for Plaintiff*